IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| RENDA MARINE, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | CASE NO. 04-1786C |
| V. | § | |
| | § | (Judge Christine O.C. Miller) |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Defendant. | § | |

## PLAINTIFF'S MOTION FOR ORDER COMPELLING DISCOVERY ANSWERS TO DEPOSITION QUESTIONS

Pursuant to RCFC 37(a)(2)(B), Plaintiff, Renda Marine, Inc. ("Renda") hereby respectfully requests that the Court issue an Order compelling the Defendant, the United States, to allow its witnesses, Thomas Benero and George J. Strickler, to answer questions in their depositions related to the preparation and issuance of the November 26, 2002 Contracting Officer's Final Decision referenced in paragraphs 67 – 69 of Defendant's Amended Answer.

## BACKGROUND

On June 30, 2006 Defendant served Defendant's Corrected Witness List on Plaintiff. Pl. App. 1. Thomas Benero ("Benero") and George J. Strickler ("Strickler") were listed as witnesses by Defendant. Def. Wit. List ¶ A.7 and C.1., Pl. App. 4,7. On June 26, 2007, Plaintiff took the oral deposition of Benero in Galveston, Texas. During the course of the deposition, Benero was shown Exhibit 52, a copy of the November 26, 2002 Contracting Officer's Final Decision ("2002 FD") (Pl. App. 11) that is the basis of the Defendant's Setoff claim contained in paragraphs 67 – 69 of Defendant's Amended Answer. Benero was the contracting officer who signed the 2002 FD.

The 2002 FD related to another dredging project (the "Upper Bayou project") performed by Plaintiff for the United States Army Corps of Engineers during a timeframe that overlapped the Mouth of the Colorado/Boggy Bayou dredging project that is the subject of this action (the "Project"). Benero was a Contracting Officer on both projects. During his deposition, Benero acknowledged conducting a meeting with Plaintiff and its surety in April 2000 to discuss the possible termination for default of Plaintiff on both projects. Benero Deposition Transcript p. 159, l. 16 - p. 163, l. 19, Pl. App. 20-21; Benero Deposition Exhibit 17, Pl. App. 25. Based upon the matters discussed and agreed to in an April 6, 2000 meeting, Plaintiff was not terminated for default on either project. Benero Depo. Ex. 17, Pl. App. 25.

Subsequent to the April 6, 2000 meeting, four months later in August of 2000, Benero again used the threat of termination for default against the Plaintiff to secure Plaintiff's agreement to the engagement of Weeks Marine ("Weeks") as a subcontractor to Plaintiff for the completion of certain dredging work at the Mouth of the Colorado area of the Project. Benero Dep. Trans. p. 217, l.15 – p. 218, l. 15. Pl. App. 22; Benero Dep. Ex. 34, Pl. App. 31. The $392,757.00 of additional costs Plaintiff incurred to pay Weeks for this work is the basis for the damages claimed by Plaintiff in its Complaint. Plaintiff's Complaint, ¶ 15 - ¶34. Plaintiff asserts in its Complaint that Defendant's conduct in forcing Plaintiff to subcontract work to Weeks was "arbitrary, capricious, and vindictive under the circumstances." Pl. Complaint, ¶32.

All but $236,016.00 of the $11,860,016.00 in Government claims against Plaintiff regarding the Upper Bayou project contained in the 2002 FD are excess reprocurement type damages that must be predicated upon a termination for default of the contractor. Benero has testified that the Plaintiff was never terminated for default on the Upper Bayou project and to the contrary, has stated, "The paperwork shows that Renda completed the majority of its contract

with the exception of Section 9. We terminated a portion – we, the Government – a portion for the convenience of the Government on Section 9 and that was the end of the contract." Benero Deposition Transcript (January 8, 2004) p.57, l.16 – p.58, l.4.; Pl. App. 33-34.

In the Benero deposition taken in this matter on June 26, 2007, Benero stated that it was his understanding that the Government had an obligation to act in good faith towards Plaintiff in the Government's dealings with Plaintiff on the Project and that this meant the Government had to be "as fair as possible with the contractor." Benero Dep. Trans. p.157, l.8 – p.158, l.23; Pl. App. 20. Later in the deposition, when Benero was asked whether he believed if the Government acting in good faith in its dealings with a contractor would not include him, in his capacity as a contracting office, taking actions that he knew to be factually incorrect or legally invalid. Benero Dep. Trans. p. 267, l.24 – p. 268, l.6; Pl. App. 23-24. The Defendant's counsel at the deposition objected and instructed the witness not to answer. Benero Dep. Trans. p.268, l. 7-10; Pl. App. 24.

When Defendant's counsel was asked the specific nature of his objection, he made reference to the 2002 FD and Plaintiff's contentions that the document was fraudulent and indicated he was going to instruct the witness not to answer any questions related to the document. After Plaintiff's counsel explained the basis for question, Defendant's counsel stated that he didn't see "how the question is remotely related to any of the claims that are the subject of the litigation" and that he was going to instruct the witness not to answer any questions about the 2002 FD. Benero Dep. Trans. p.268, l.13 – p. 269, l.15; Pl. App. 24. After Benero was shown a copy of the 2002 FD, he stated that he would not answer any questions regarding the exhibit. Benero Dep. Trans. p. 269, l.16 – p. 270, l. 2; Pl. App. 24. The deposition was adjourned at that point.

George J. Strickler ("Strickler") is listed as an expert witness on the Defendant's Corrected Witness List (Pl. App. 7 ) and a RCFC 26(a)(2) report authored by Strickler was served on the Plaintiff by the Defendant, indicating Defendant's intent to offer expert testimony from Strickler at the trial in this matter. Strickler was also engaged by the Government to provide assistance to Benero in connection with the analysis, negotiation and defense of disputed matters between the Government and Plaintiff on the Upper Bayou project. Attached at Pl. App. 35 is a copy of email correspondence between Benero and other Corps of Engineers representatives in August 2001 regarding the engagement of Strickler to assist the Government on the Upper Bayou project. The date of the email correspondence confirms Strickler's engagement well before the issuance of the 2002 FD.

## ARGUMENT

RCFC 26(b)(1) addresses the general scope of discovery and provides that "parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party". RCFC 26(b)(1) also indicates that "relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." A party is entitled to discover information about all fact witnesses. Scheetz v. Bridgestone/Firestone, Inc., 152 F.R.D. 628, 631 n.3 (D. Mont. 1993).

The Federal Rules of Evidence allow the credibility of any witness to be attacked. FRE 607. One method of attacking a witness's credibility is to impeach the witness by introducing evidence of bias. The U.S. Supreme Court, in U.S. v. Abel, 469 U.S. 45, 105 S. Ct. 465 (1984) stated that the FREs "do not by their terms deal with impeachment for 'bias'. At 49, 467. "We think ... that it is permissible to impeach a witness by showing his bias under the [FREs]. At 51, 468-69. "Bias is a term used in the 'common law of evidence' to describe the relationship

between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against another party. Bias may be induced by a witness' like, dislike, or fear of a party, or by the witness' self-interest. Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony." At 52, 469.

Defendant's reliance on "relevancy" as the basis of its objection to any use or questioning of Benero (or presumably Strickler) regarding the 2002 FD is misplaced. Even though the 2002 FD may be considered extrinsic evidence; nonetheless, it is still permissible for Plaintiff to make reasonable inquiries on the matter to demonstrate bias on the part of the witness. The potential bias of a witness is always relevant testimony, and is permitted even on direct examination. United States v. Powell, 124 F. 3d 655, 661 (5th Cir. 1997). "Evidence of bias or lack of bias is substantive ... it may well be developed on direct examination, as well as cross-examination, just like any other substantive evidence." Id, citing United States v. Fusco, 748 F. 2d 996, 998 (5th Cir. 1984). Additionally, the Courts of Appeals have upheld use of extrinsic evidence to show bias both before and after the adoption of the Federal Rules of Evidence. U.S. v Abel, supra at 51.

Recognizing the broader latitude of questioning afforded in a deposition, Plaintiff submits that it is entitled to question Benero about the 2002 FD for the purpose of impeaching his credibility by demonstrating bias against the Plaintiff. This line of questioning would certainly permit inquiry as to whether Benero, in his capacity as contracting officer on the Upper Bayou project, took actions adverse to the Plaintiff that he knew were either factually incorrect or legally invalid. To the extent Strickler was engaged to assist and provide guidance to Benero in

Benero's negotiations and dealing with the Plaintiff on the Upper Bayou project, Plaintiff has the right to make similar inquiries of Strickler to demonstrate his bias against the Plaintiff.

Plaintiff's request for an order from the Court compelling answers to such discovery questions in the depositions of Benero and Strickler would not cause any delay to these proceedings and would not otherwise prejudice the Defendant. Even though the period for fact discovery closed on August 31, 2007 pursuant to the Court's March 21, 2007 Order, Benero's deposition was taken prior to such deadline and the Defendant prevented Plaintiff from obtaining answers to its questions during such deposition. Plaintiff estimates that its questioning of Benero on the 2002 FD to demonstrate bias will take no more than an hour. Further, Strickler's deposition is currently scheduled to occur on January 10, 2008 and allowing such line of inquiry would in no way cause prejudice to the Defendant.

RCFC 37(a)(2)(B) provides that a party may apply for an order compelling disclosure or discovery "[I]f a deponent fails to answer a question propounded or submitted under RCFC 30 ... When taking a deposition on oral examination, the proponent of the question may complete or adjourn the examination before applying for an order." In this instance, the deposition was adjourned.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to compel the answers to deposition questions should be granted, and the Court should issue an Order allowing Plaintiff to resume Benero's deposition for up to an additional hour and compelling the Defendant to allow its witnesses, Thomas Benero and George J. Strickler, to answer questions in their depositions related to the preparation and issuance of the November 26, 2002 Contracting Officer's Final Decision referenced in paragraphs 67 – 69 of Defendant's Amended Answer.

Respectfully submitted,

*/s/ Terry L. Salazar*

Terry L. Salazar
Texas Bar No. 17527500
**QUILLING, SELANDER, CUMMISKEY & LOWNDS, P.C.**
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
(214) 880-1857 (Telephone)
(214) 871-2111 (Telefax)

**ATTORNEY FOR RENDA MARINE, INC.**

December 20, 2007.

## CERTIFICATE OF CONFERENCE

I hereby certify on October 2, 2007 I conferred with Defendant's counsel regarding this matter and the filing of this Motion and Defendant's counsel responded that his position regarding refusal to allow answers remained unchanged.

*/s/ Terry L. Salazar*
Terry L. Salazar

## CERTIFICATE OF FILING

I hereby certify that on this 20th day of December, 2007, a copy of "PLAINTIFF'S MOTION FOR ORDER COMPELLING DISCOVERY ANSWERS TO DEPOSITION QUESTIONS" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Terry L. Salazar*
Terry L. Salazar